Thomas Ray VESSELS, Petitioner,

v.

James ESTELLE, Director, Texas Department of Corrections, Respondent.

Civ. A. No. 72–H–364.

United States District Court.
S. D. Texas,
Houston Division.

Dec. 18, 1973.

Mark W. Perrin, Houston, Tex., for petitioner.

**1306**

John L. Hill, Atty. Gen., of Tex., Dunklin Sullivan, Asst. Atty. Gen., of Tex., Austin, Tex., for respondent.

## MEMORANDUM AND ORDER:

SEALS, District Judge.

This is a proceeding for the Writ of Habeas Corpus under 28 U.S.C. § 2254. Petitioner was convicted in Gray County, Texas in 1966, Cause No. 2108, for the offense of rape and was sentenced to death in the electric chair. Pursuant to previous conviction in Cause No. 1610, Court of Randall County, Texas, the Petitioner was incarcerated in the Texas Department of Corrections while he appealed his conviction in Cause No. 2108. The Texas Court of Criminal Appeals reversed his conviction for rape in Cause No. 2108 and remanded for a new trial.

Following his discharge from the Texas Department of Corrections on completion of serving his sentence in Cause No. 1610, Petitioner was returned to Gray County for re-trial in Cause No. 2108. Venue was changed to Harris County, Texas and Petitioner was tried under the 1966 Gray County rape indictment in Cause No. 140084 in 176th Judicial District Court of Harris County, Texas. Upon a jury verdict of guilty Petitioner was sentenced to a term of not less than five nor more than twenty years in the Texas Department of Corrections.

Having exhausted all available state remedies, Petitioner filed this Petition for Writ of Habeas Corpus asserting generally that the conviction in Cause No. 140084 by virtue of which he is presently incarcerated, was obtained in violation of his constitutional rights. On January 31, 1973 this Court conducted an evidentiary hearing as provided by 28 U.S.C. § 2243. The Court, after hearing all the evidence and arguments of counsel at the hearing, and upon all the files, records, proceedings and briefs, herein enters the following Memorandum Opinion which shall constitute the Findings of Fact and Conclusions of Law of this Court.

█ Petitioner asserts five grounds which he contends entitle him to relief. Three of them are with little merit and may be quickly resolved. He first contends that he was denied his "right to be heard" as articulated in Article 1, Section 10, Texas Constitution, Vernon's Ann.St., and Article 1.05, Texas Code of Criminal Procedure, Vernon's Ann. Both provided that "the accused . . . shall have the right of being heard by himself, or counsel, or both."

The evidence indicates that on several occasions during the punishment stage of his trial, Petitioner attempted to address the Court. Petitioner was represented by counsel at all stages, thus he was being heard. The Petitioner has failed to show harm to himself or abuse of discretion in the Court's refusal to allow Petitioner to speak. The Court finds Petitioner was heard through his attorney and that therefore this contention presents no federal question.

██ Petitioner's second contention, that he was never notified that the death penalty would be sought in the manner dictated by Article 1.14 of the Texas Code of Criminal Procedure, is likewise without merit. The evidence indicates that the written notice required by Article 1.14, Texas Code of Criminal Procedure, was filed with the court clerk prior to the first trial on the rape indictment. No no notice was given prior to the second trial, but the jury was qualified during *voir dire* for the death penalty. However, they did not impose that sentence in defendant's case. A defendant who did not receive the death penalty in a capital case is not entitled to relief because potential jurors who had conscientious scruples against the death penalty were challenged for cause. Cunningham v. Beto, 440 F.2d 1331 (5th Cir. 1971). See also Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

Petitioner next alleges that he did not receive a fair trial by an impartial jury because:

(1) The jury was unable to comprehend the charge as evidenced by their

message to the Court requesting a dictionary;

(2) The jury received a recess during deliberation in order to permit them to watch United States astronauts on television;

(3) One of the jurors was informed by the Gray County Sheriff that the Petitioner had been previously convicted of this offense in Gray County, and that the juror could not get this fact out of his mind; and

(4) Prior to conclusion of trial one of the jurors learned that his car had been stolen, thus making him the victim of a felony, and on that basis Petitioner's defense attorney made a motion for mistrial which the trial court denied.

 The general test to be applied in determining if the jury or any juror is impartial is set out in Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961):

Whether a defendant in a state criminal prosecution is denied due process of law because of prejudice by the jury is tested by the question whether the nature and strength of the opinion formed are such as in law necessarily raised the presumption of partiality, and this question is one of mixed law and fact. The findings of impartiality should be set aside only where prejudice is manifest.

From the record it appears Petitioner's attorney assented to the jury being allowed to watch the space shot and to them being given a dictionary. Neither standing alone would evidence prejudice of the jury to the defendant. Further, the fact that the jury asked for a dictionary does not make a prima facie case that they did not understand the charge. Generally, the propriety of the Court's instructions to the jury is not reviewable by a federal court on habeas corpus absent a showing of a fundamentally unfair trial. Young v. Alabama, 443 F.2d 854 (5th Cir. 1971); Higgins v. Wainwright, 424 F.2d 177 (5th Cir. 1970), cert. den. 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142.

 As to the question of the juror's knowledge of the previous conviction of Vessels for this offense which had been overturned by the Texas Court of Criminal Appeals, this came to light during voir dire prior to the jury being selected. According to an affidavit filed by the juror in question (Petitioner's Exhibit No. 2–A) this information was relayed to him by another member of the jury panel who was ultimately not selected for the jury. Petitioner was represented by counsel during this stage of the trial. In the questioning of this juror about the incident, Petitioner's counsel told them that if he could try the case on the evidence presented, independent of any result that might have been reached by a different jury some two and one-half years ago, he would be accepted as a member of the jury. The juror stated that he could try the case on the evidence presented. (T. 844–882). Petitioner's attorney made no attempt to have the juror struck from the panel at that time. It is the finding of this Court that the fact that the juror knew of the conviction is not of itself sufficient evidence of prejudice without credible testimony that he was prejudiced or that he was put on the jury over Petitioner's attorney's objection. No such evidence exists here.

 As to the juror whose auto was stolen, the record indicates that it was recovered prior to the conclusion of the trial. Trial counsel for Petitioner properly objected and moved for a mistrial on the basis that the juror was the victim of a crime and this would impair his ability to be fair and impartial. The trial court denied the motion. Such denial was clearly within the discretion of the trial judge and does not present a question of constitutional dimension. The fact a juror's car was stolen, without evidence to show that it affected his impartiality, does not of itself prove the juror was prejudiced. Petitioner was tried by a fair and impartial jury.

 Petitioner's fourth contention, that he was deprived of constitutional rights because he was not afforded a sanity hearing and his trial attorney

refused to assert insanity as a defense, is likewise without merit. Generally, when a prisoner, either state or federal, seeking post conviction relief, asserts with substantial facts to back up his allegation, that at the time of the trial he was not mentally competent to stand trial, and that there was no resolution of that precise issue before he was tried, convicted, and sentenced, the protection of the Fourteenth Amendment to the Constitution requires that such conviction and sentence be set aside unless upon adequate hearing it is shown that he was mentally competent to stand trial. Lee v. State of Alabama, 386 F.2d 97 (5th Cir. 1967 en banc). Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966). However, no sanity hearing is mandated by Pate v. Robinson by a naked suggestion that the defendant may be incompetent. Evidence must be presented which is sufficient to raise a "bonafide doubt" as to the defendant's competency to stand trial. Jordan v. Wainwright, 457 F.2d 338 (5th Cir. 1972). No such evidence has been presented to this Court. At the hearing before this Court Petitioner's trial attorney testified that Petitioner understood the nature of the charges against him, that he had a rational as well as a factual understanding of the charges against him and that he cooperated with him in the preparation of a defense. The only testimony which casts a shadow of doubt on Petitioner's competency to stand trial is that of the Petitioner. But, the Court is of the opinion that he is not a credible witness based on his record of prior convictions as well as his demeanor as a witness. The Court finds Petitioner was competent to stand trial and that he was not deprived of any constitutional rights because he was not afforded a sanity hearing.

Petitioner's assertion that he was deprived of his constitutional rights by his trial counsel's failure to assert insanity as a defense likewise is without merit. Petitioner was represented at his trial by one of the most respected and competent criminal law at-torneys in Texas. The evidence at the hearing clearly shows that the possibility of an insanity defense was discussed by trial counsel and his petitioner, and rejected as a trial strategy because it appeared that it would hurt Petitioner's case more than help. The Court is well aware that at the time of Petitioner's trial the insanity defense was one of the worst possible defenses that could be asserted against a charge of rape and that such a defense generally had the effect of turning the jury against a defendant rather than arousing their sympathy for him. When a defendant is represented by competent counsel, counsel is the manager of the lawsuit and the defendant is bound by the superior knowledge and tactical decisions made by his attorney. See Williams v. Beto, 354 F.2d 698 (5th Cir. 1965). As this Court has said before we will not judge by hindsight the trial decisions of an attorney when those decisions follow accepted legal strategy and when, in the context of the time the decisions were being made, they appeared in the best interests of the client. Doggett v. United States of America, (S.D.Tex. Opinion 72–H–996, October 5, 1972), affm'd. 471 F.2d 651 (5th Cir., 1973).

Petitioner finally contends that he was denied his rights under the Fourth Amendment to the United States Constitution by the trial court's admitting into evidence items seized from Petitioner's residence by execution of an unconstitutional and invalid search warrant. The search warrant in question was issued by the magistrate solely on the basis of the sheriff's affidavit (Petitioner's Exhibit 5–A). Petitioner takes the position that the affidavit failed to establish probable cause for the issuance of a search warrant because it contained no underlying circumstances upon which the magistrate could evaluate the affiant's conclusion that the items sought to be seized were at Petitioner's residence and in his automobile. He further maintains that the affidavit is insufficient because it failed to inform the magistrate of the facts and circum-

stances upon which the affiant based his conclusion that the informant or informants were reliable and credible.

■ Generally speaking, in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on their use of common sense [United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965)] and their determination of probable cause should be paid great deference by reviewing courts. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). An affidavit may be based on hearsay information, and need not reflect the direct personal observations of the affiant so long as the magistrate is informed of some of the underlying circumstances supporting the affiant's conclusions and his belief that any informant involved whose identity need not be disclosed was credible or his information reliable. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). As observed by the Supreme Court,

> Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.

*Ventresca,* supra at 109.

■ While the affidavit in this case may not be the best affidavit in the world, the Court is of the opinion that taken as a whole the affidavit is sufficient upon which to base a finding of probable cause. To begin with, it is evident from the affidavit that the principle informant was the victim of the crime and that she provided to the affiant a detailed description of the assailant, the manner of entry, the attack made and the subsequent theft. Certainly the victim of a crime must be considered to be a credible source of information about that crime.

■ The affidavit, furthermore, provides the underlying circumstances upon which a magistrate could find that the items sought to be seized were at Petitioner's residence and in his automobile. The affidavit clearly spells out what the officers were looking for, that is the knife used by the assailant and described by the victim as being used in the crime, the $7.00 taken from the victim, and the man's clothing which became bloody as a result of the assault. Furthermore the affidavit indicated that the assailant's car was seen in the vicinity of the victim's house which is described in detail, that the assailant left the house with the knife, and that the assailant's house was a place where implements such as knives would ordinarily be kept. From this information a magistrate could logically conclude that the person seeking the search warrant was not on a fishing expedition, but rather knew what he was looking for and where to find it. In short this Court, mindful of the deference which is generally paid to the magistrate's determination of probable cause by reviewing courts, must conclude that the affidavit in question was sufficient on which to base the issuance of a search warrant.

■ Even if the Court were to find that the affidavit upon which the search warrant was issued was defective and that therefore the fruits of the search were inadmissible at trial, the Court would still be compelled to deny Petitioner the relief he seeks because any such error was harmless in view of the overwhelming evidence of guilt. Under Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), a constitutional error can be held harmless and therefore not reversible if it ap-

pears that it was "harmless beyond a reasonable doubt." This has been interpreted by the Fifth Circuit Court of Appeals to mean

> . . . that at the very least an error is harmless beyond a reasonable doubt if the evidence which was properly received leaves no room for the jury to entertain any reasonable doubt as to guilt.

Loftis v. Beto, 450 F.2d 599 (5th Cir. 1971).

The transcript of the trial and the evidence introduced at Petitioner's hearing in this court indicate that the complaining witness identified the Petitioner in the courtroom as the man who had attacked her. She testified that he was in her home for thirty minutes or so, thus giving her ample time to observe him. She identified him first from a photograph, and testified that it was a positive identification. She further testified that there was not the slightest doubt in her mind but that Petitioner was the man who raped her, and that she could never forget his face under any circumstances. It was the strong and positive identification of Petitioner by the victim that lead to his conviction, and such identification left no room for the jury to entertain any reasonable doubt as to guilt. Any error in the introduction of the items recovered from the search was clearly harmless.

It is therefore the opinion of this Court that the Petitioner has been denied no federally protected rights.

It is hereby ordered, adjudged and decreed that the Petition for Writ of Habeas Corpus is in all things denied.

SUPPLEMENTAL MEMORANDUM OPINION:

On July 19, 1973 this Court by Memorandum and Order denied Petitioner's Petition for Writ of Habeas Corpus. Subsequently, the Court received a letter from the Petitioner which was construed as a Motion to Amend the Findings under Rule 52(b), F.R.Civ.P. and as a Motion for New Trial under Rule 59, F.R. Civ.P. and it ordered them timely filed.

The Court further ordered the motions be set for hearing at the next available habeas corpus docket of this Court. Following receipt of the order both sides filed briefs with the Court and at habeas corpus docket call, with Petitioner, his counsel and counsel for the Respondent present, it was agreed by all that there was no necessity for any further evidence to be presented.

Petitioner has asked the Court to reconsider its findings on three issues:

1. the validity of the search upon which the search of his home was made,
2. his competency to stand trial,
3. has right to assert insanity as a defense.

Petitioner maintained at the hearing before this Court that he was denied his rights under the Fourth Amendment to the United States Constitution by the trial court's admitting into evidence items seized from his residence in a search based on an unconstitutional and invalid search warrant. In addition the arguments previously urged and disposed of by this Court, the Petitioner for the first time urges that the search warrant was invalid because the information in the supporting affidavit was stale because it related to events which had taken place fourteen days prior to the making of the affidavit.

Timeliness as an element in probable cause must be "determined by the circumstances of each case." Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932). The events in this case are very similar to the recent Fifth Circuit case of Bastida v. Henderson, 487 F.2d 860 (5th Cir. 1973). There the Court found that a nine day delay in the application for a warrant did not defeat the reasonable probability that the pistols used in a robbery were at the quarters of the accused robber. The Court observed that in general:

> "the basic criterion as to the duration of probable cause is the inherent nature of the crime. The Circuits hold that where an affidavit recites a mere isolated violation then it is not unrea-

sonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance. (cits omitted)"

Ibid. at 864. In applying this standard to the facts before them the Fifth Circuit further stated:

"We recognize that this alleged robbery was not a continuing offense but it is equally true that the pistols were most likely to remain as continuing articles." supra.

Likewise, in the case before this Court the alleged rape was not a continuing offense, but the knife and the clothes which were the subject of the search were likely to remain as continuing articles. Thus, under the circumstances of this case the Court is of the opinion that the lapse of the fourteen days between the commission of the crime and the issuance of the warrant did not render the finding of probable cause invalid.

The Court has previously carefully considered and disposed of Petitioner's other arguments with reference to the search and seizure question and feels that no amendments to its findings are necessary. As has been observed by the Fifth Circuit:

"In issuing a warrant the magistrate must exercise his own judgment as to whether the facts alleged in the affidavit constitute probable cause for issuance of the warrant, he must act on the entire picture disclosed to him, he is entitled to use his common sense, and the courts have gone so far as to say that when this is done his determination is conclusive in the absence of arbitrariness."

*Ibid.* at 863.

In the absence of any showing of arbitrariness in this case, the Court must adhere to its conclusion that the affidavit in question was sufficient on which to base the issuance of a search warrant and that Petitioner was not subjected to an unreasonable search and seizure in violation of his constitutional rights.

The Petitioner also urges the Court to amend its findings with respect to his competency to stand trial and his attempts to assert insanity as a defense. Petitioner in his letter to the Court speaks in terms of his right to a sanity hearing in relation both to his sanity at the time of the commission of the crime and his sanity at the time he was tried as if they were one issue. It is incumbent upon the Court to emphasize that these are two separate and distinct issues: Petitioner's sanity at the time of the commission of the crime raises the question of his right to assert insanity as a defense; his sanity at the time of trial in effect raises the issue of his mental competency to stand trial. The Court has re-examined the evidence at the hearing and its findings with respect to these two issues, and concludes that Petitioner's request for amendment to these findings should be denied.

The constitutional issue to be determined is the question of whether the Petitioner was legally competent to stand trial. See McGarrity v. Beto, 335 F.Supp. 1186 (S.D.Tex., 1971), aff'd 452 F.2d 1206 (5th Cir. 1971), cert. denied 406 U.S. 909, 92 S.Ct. 1619, 31 L.Ed.2d 820 (1972). Petitioner in his letter to the Court points to two isolated incidents which he alleges show his incompetency to stand trial. The first is a motion he made for a sanity hearing prior to Mr. Warren Burnett's involvement in the case, and the second is that he had to be prodded alert by one of his attorneys during the trial. As to his first point, the record reflects that prior to the Petitioner's first trial he filed a request for sanity hearing which was overruled. There also is a letter in the record from a doctor who examined Petitioner on three occasions prior to his first trial, apparently at the request of the district attorney expressing his opinion that although Petitioner did have a sociopathic personality disturbance he was not legally insane. It must be noted that all of this took place at the first trial of Petitioner, which resulting conviction was reversed and remanded. This had the effect of wiping out the

previous trial and thus it was incumbent upon the Petitioner to raise the issue again before the court at the second trial as specified in Code of Criminal Procedure, Article 46.02, Tex.Rev.Civ. Stat.

As to the second incident the very credible testimony of Mr. John Kibbler, one of two attorneys who aided Mr. Burnett in the defense of Petitioner at the second trial, indicates that at one point during the trial Petitioner was not alert because of some medication he was taking at the time, that this occurred the morning that Petitioner was to take the stand to testify and that after a delay he did in fact take the stand and testified. As this Court has stated previously it takes more than a naked suggestion that the defendant may be incompetent to stand trial in order to come within the scope of Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed. 2d 815 (1966). It takes evidence sufficient to raise a "bona fide doubt" as to Petitioner/defendant's competency to stand trial, Jordan v. Wainwright, 457 F.2d 338 (5th Cir. 1972), and such evidence just does not exist in this case. See Daugherty v. Beto, 388 F.2d 810 (5th Cir. 1967).

The Court would emphasize again that Petitioner was represented by one of the most outstanding attorneys in this state who was aided at trial by two other respected, competent attorneys. The Court would also note that Petitioner's trial attorney at the second trial first became interested in his case when the first conviction was on appeal and was successful in getting that conviction reversed. The evidence clearly indicates that the possibility of asserting insanity defense was discussed on several occasions and that trial counsel was firm in his conviction that the insanity defense would be extremely detrimental to Petitioner/defendant's case and therefore should not be urged. As observed by this Court in its first opinion, it is well aware that at the time of Petitioner's trial the insanity defense was one of the worst possible defenses that could be asserted against a charge of rape and that such a defense generally had the effect of alienating the jury rather than arousing their sympathy.

As pointed out by the Fifth Circuit in its most recent discussion of when a defendant's personal waiver is required:

"Our Constitution has been held to afford all criminal defendants the right to counsel. The cardinal precept upon which the establishment of this right is predicated is that most defendants are untutored in the law and are unqualified to conduct their own defense. It would be incongruous to reflexively allow a defendant such as Winters to void his conviction when his privately-employed lawyer did what he was retained to do—use his skill and knowledge of the law to further the best interests of his client . . . ."

Winters v. Cook, 489 F.2d 174 (5th Cir. en banc, 1972). If Petitioner was insistent upon raising insanity as a defense he should have sought another attorney to try the case. Yet the record is clear that at no time did Petitioner seek to have his trial counsel, Mr. Burnett, removed from the case.

Even if a constitutional right to assert insanity as a defense were to exist this Court is of the opinion that it is not such an inherently personal fundamental right that it can be waived only by the defendant and not his attorney. As recently analyzed by the Fifth Circuit:

"Such personal fundamental rights include the right to plead guilty (which of course encompasses the waiver of numerous rights), the right to waive trial by jury, the right to waive appellate review and the right to testify personally."

*Ibid.* at 179.

Thus, for the reasons stated herein, it is ordered, adjudged and decreed that Petitioner's Motion to Amend Findings pursuant to Rule 52(b), F.R.Civ.P., and Motion for New Trial pursuant to Rule 59, F.R.Civ.P., are in all respects denied.