Phillip BOLLINGER, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–487.

Court of Criminal Appeals of Oklahoma.

Nov. 3, 1976.

On Rehearing Nov. 30, 1976.

Tom A. Boardman, Dallas, Tex., for appellant.

Larry Derryberry, Atty. Gen., Michael W. Jackson, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The Appellant, Phillip Bollinger, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court of Oklahoma County, Case No. CRF–75–2259, of the crime of Assault and Battery with a Deadly Weapon with Intent to Kill. Punishment was assessed at a term of five (5) years in the custody and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in conformance with the verdict the defendant has perfected his timely appeal.

Briefly stated the evidence adduced at trial is as follows: Toni Anderson testified that at approximately 1:30 A.M. on the morning of June 11, 1975, she received a call from a man who identified himself as "Wayne" and asked if he could come over. Thinking it was a man she had dated she acquiesced. Shortly there was a knock at the door and when she opened it a man with a woman's stocking pulled over his head, wearing a dark T-shirt with a pocket and green jean-type pants and holding a small caliber, long barreled pistol forced his way into the house, grabbing the witness around the neck and holding the gun to her head. After a struggle, Ms. Anderson broke away and was running for the back door when the assailant shot her in the side. The witness continued running, going out the back towards a neighbor's house, with the assailant following and firing two more shots. The witness identified the defendant as the assailant. She further testified that in October of 1974, in response to an advertisement she had gone to the defendant's home in Moore and purchased two dogs. Payment was made with a personal check which disclosed her address and phone number. She was in the home approximately 30 minutes and had occasion to meet the defendant and his family. She further testified that in January, 1975, the defendant appeared at her home, unannounced, at about 10:30 P.M. and stated he wanted to come in. She told him she did not remember him and he then stated she had bought two dogs from him. She then remembered his name and who he was. As defendant attempted to come in she "shoved him back out the door and told him to go back home to his wife." [Tr.15] The only other time she saw the defendant was the night of the shooting. She further testified that after the shooting she saw the defendant leave in a late model blue automobile with a white vinyl top and opera windows.

On cross-examination and in response to defense counsel's questions, the witness, the victim, testified she was taken by ambulance to a hospital emergency room where she was questioned by two detectives from the Oklahoma City Police Department. They asked her if she knew her assailant and she told them she thought it was Phillip Bollinger, the defendant, although she was not absolutely sure until she saw him

at the preliminary hearing in July. She put it this way, "I said it was him at that time (in the emergency room) and when I saw him again (at the preliminary) there was no doubt." On redirect examination the witness identified a dark T-shirt and a green pair of pants as being the clothes worn by the defendant on the night of the shooting.

Oklahoma City Police Officer, Robert W. Thompson, a detective, testified his first contact with the alleged crime was on June 12, when the case and earlier police reports were assigned to him. The reports reflected the victim had given the name of Phillip Bollinger as a suspect and the officer pursued this lead by first attempting to see Toni Anderson in person at the hospital, which was denied, then by calling her by phone the next day, the 13th, and the name of Phillip Bollinger was verified by the victim. He then determined where the defendant lived in Moore and on the 18th went to that residence where he found a white over blue 1975 Grand Prix Pontiac with opera windows in the driveway. After talking to the defendant's wife the officer subsequently returned with a search warrant. During the search of the defendant's residence Thompson found the black T-shirt with a single pocket and a green pair of pants. He left word with Mrs. Bollinger for the defendant to contact him upon his return from a truck trip to Texas. The following morning the defendant came to the Detective Bureau and Officer Thompson advised the defendant that Toni L. Anderson was the victim of a shooting at her home and that he was a suspect. After being fully advised of his *Miranda* warnings, the defendant told the officer that he wanted to tell him something but did not want his wife to know about it. He then related to the officer about his going to Toni L. Anderson's home one night, unannounced, back in January, and she had asked him to leave and he left. The defendant told the officer that he had owned a .22 caliber, long barreled target pistol but that it had been stolen on June 10th. The officer further identified a .22 caliber bullet which had been dug out of a wall in the victim's dining room.

For the defense the defendant testified that on the 10th day of June he was in Tulsa applying for a job when he noticed that his target pistol was missing from his Volkswagen. While in Tulsa he received a phone call advising that his wife had just given birth to a child and after returning to Oklahoma City to see his wife and new baby he went home to see his older daughter and visiting grandmother. After resting he went back to the hospital that evening to visit his wife and returned home after visiting hours. His grandmother and daughter went to bed shortly after he arrived home and the defendant went to bed at approximately 10:30 P.M. and did not wake until 7:00 A.M. on the morning of the 11th. The defendant further testified that he had owned a target pistol but that it was evidently stolen from his car while he was in Tulsa. The defendant further admitted having sold some dogs to Toni Anderson and having subsequently gone to her residence in January after he and his wife had had an argument and he needed someone to talk to. He further admitted that the black T-shirt and green jeans were his, but stated that the pants were a size 38 waist, that he had lost weight 6 to 8 months before the shooting and that he could not have worn the pants in June because they were much too large. On cross-examination the defendant stated that his target pistol was a .22 caliber, that he owned a Volkswagen and that the gun was evidently taken out of the glove compartment in Tulsa on the 10th. He further stated that his brother owned a 1975 blue Pontiac Grand Prix with a white vinyl roof and opera windows and that at the time of the shooting his brother was out of town and had left the car with them. He further testified that he had talked willingly with Officer Thompson and he had told the officer about going to Toni Anderson's

home one night in January and that he did not want his wife to know it and that he had not told her.

Charlotte Bollinger, the defendant's wife, then testified that her daughter was born approximately 3:30 P.M. on June 10, 1975, and that her husband visited the hospital that afternoon and then returned about 7:30 P.M. and stayed until 8:30 P.M. She then called him at home around 10:00 P.M. and that he stated he was watching televi-sion. She further testified that she subsequently had occasion to talk to Officer Thompson at her home concerning the whereabouts of her husband and his brother. Thompson later called concerning their whereabouts and later called concerning whether her husband owned a gun and she told him that he did but that it had been stolen a week or so earlier. Officer Thompson then returned with a search warrant. On cross-examination she identified the shirt and pants taken by Officer Thompson pursuant to a search warrant. She further stated that her husband had not told her that he had gone over to the victim's house in January, but she had learned of this for the first time about the 18th of June when she and her husband employed his attorney and he explained it to the attorney.

The defendant's grandmother, Mrs. A. R. Brown, then testified that the defendant returned from the hospital about 8:30 P.M. and that they watched television until around 10:00 P.M. when she went to bed. She further stated she was on medication and at 2:00 A.M. on the morning of the 11th she woke up and went in the kitchen to take a pill and had occasion to pass the defendant's bedroom. The defendant was asleep in his bed.

■■■■ The defendant, in his first assignment of error urges two separate propositions, both of which are predicated on the search warrant obtained for the purpose of searching the defendant's home. First of all, the defendant correctly asserts that when a search warrant is to be issued upon information by an informant, the af-

fidavit must be accompanied by facts which indicate the reliability and credibility of the informant. We have no argument with this statement of the law. However, the defendant's application of this principle is, in our opinion, clearly erroneous. Information conveyed from the victim, Toni Anderson, was used by the officer in his sworn testimony before the Magistrate in support of the affidavit for the search warrant, which conformed substantially to the testimony of the victim at the trial and as summarized herein. Also testified to by the officer was that he had received a crime "lab" report that a .22 caliber long-rifle live cartridge had been discovered lying in the hallway of the residence of the victim and one bullet hole had been found in one of the doorways. Within the statement of this proposition, the defendant makes the assumption that the victim is necessarily an "informant". The defendant has not offered any authority which supports a finding that a victim of a crime is considered an informant for the purposes of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and, *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). In the study of this proposition this Court has considered many cases and has failed to produce one case wherein the victim was considered an informant within this context. The initial imposition of rules calling for officers to establish credibility of their informants was predicated on the evils of a system which allowed the hearsay of an unknown or perhaps even non-existent person to be the source of information for establishing probable cause to enter and search an otherwise constitutionally protected area. But, in the instant case the victim is not confidential but rather known to all parties and once more, her allegations are open to scrutiny by the judicial process. The charges made by a confidential informant may quite probably send the defendant into the judicial process without ever again requiring an appearance of the informant. However, the victim must be continually subjected to the

openness of a trial. The knowledge of a victim that he will be subjected to the ensuing proceedings; that he is known to all parties; and that his assertions will be meticulously examined, assures a degree of credibility which far surpasses that which is offered by sworn facts which the defendant now contends should have been offered in the officer's affidavit. This same proposition was briefly dealt with in *Vessels v. Estelle,* D.C., 376 F.Supp. 1303 (1973), wherein the Court held:

> "The victim of a crime must be considered to be a credible source of information about that crime."

We agree. To hold as the defendant now suggests would broaden the application of this principle into an area much greater than common sense suggests.

Secondly, the defendant proposes that the search warrant was issued without probable cause to believe that the evidence sought was located on the described premises. The items listed in the search warrant consisted of a navy blue T-shirt with a single pocket, green pants, brown cotton gloves, a .22 caliber blue steel long barreled revolver, and a box of .22 caliber long rifle cartridges.

In *Leonard v. State,* Okl.Cr., 453 P.2d 257 (1969), this Court set forth circumstances under which a warrant would issue:

> "[A]ll affidavits made by officers seeking a search warrant must be set forth in language, under oath, that the officer has personally observed a violation of law, or the possession of contraband, upon certain described premises, detailing to such a degree the minute particulars of these observations sufficient to support an arrest without a warrant, *or to show the probability that contraband, or items used in the commission of crime, or fruits of crime, are on the described premises . . . .*" (Emphasis Added)

This Court is of the opinion that there existed a probability that items used while the defendant was in the commission of the crime were on the described premises. In *United States v. Rahn,* 511 F.2d 290 (10th Cir. 1975), the appellant attacked the sufficiency of a search warrant by contending that there was no probable cause to believe that the articles listed would be found in the defendant's residence. The court determined that the defendant's residence was the natural place for concealing a weapon. In that case the court cited the following language from *United States v. Lucarz,* 430 F.2d 1051 (9th Cir. 1970):

> "The situation here does not differ markedly from other cases wherein this court and others, albeit usually without discussion, have upheld searches although the nexus between the items to be seized and the place to be searched rested not on direct observation . . . but on the type of crime, the nature of the missing items, the extent of the suspect's opportunity for concealment, and normal inferences as to where a criminal would be likely to hide stolen property."

It is noteworthy that affidavits for search warrants are to be tested in light of common sense and reality. *United States v. Ventresca,* 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). In the instant case the officer was seeking clothing and the weapon used in the crime. In considering the situation realistically, the logical inference is that a criminal, who believes his identity has been concealed, would return his clothing and property to his home. Such an inference is not certainty, but a certainty is not required. And, we are of the opinion that, at the least, a probability existed that the property sought was indeed at the residence of the defendant. The trial court did not err in finding that probable cause existed to believe that the listed articles were on the described premises.

Finally, the defendant contends that five (5) years was excessive punishment when consideration is given to the excellent record of the defendant. However, primary consideration must be given to the facts and circumstances of the crime

committed by the defendant. The deadly and reckless manner in which the defendant conducted himself warrants at the very least imprisonment of five (5) years. Needless to say the conscience of the Court has not been shocked by the imposition of the five (5) years imprisonment. *Clouse v. State*, Okl.Cr., 389 P.2d 1002 (1964).

In light of the foregoing discussion, the judgment and sentence is, accordingly, *AFFIRMED*.

BRETT, P. J., and BUSSEY, J., concur.

## OPINION UPON PETITION FOR REHEARING

BLISS, Judge:

On November 3, 1976, this Court affirmed the conviction of the Appellant, Phillip Bollinger, for the crime of Assault and Battery with a Deadly Weapon with Intent to Kill. From this affirmation the defendant has perfected to this Court a timely Petition for Rehearing.

The defendant contends that this Court erred when it held that there was sufficient probable cause to justify the issuance of a warrant directed at the residence of the defendant. Briefly, the evidence revealed that the defendant forced his way into the home of Toni Anderson and, after a struggle, shot her in the side. Ms. Anderson ran out the back of her home and went to a neighbor's house, while the defendant, after firing two more shots, went to the front of Ms. Anderson's home and got into a late model blue automobile with a white vinyl top and opera windows. Ms. Anderson also observed that the defendant was wearing a dark T-shirt with a pocket and green jean-type pants and was carrying a small caliber, long barreled pistol. Also, Detective Robert W. Thompson of the Oklahoma City Police Department testified that he went to the home of the defendant, at the direction of the victim, and found a white over blue 1975 Grand Prix Pontiac with opera windows. At this point, Detective Thompson proceeded to obtain a search warrant for the residence of the defendant. The items listed in the search warrant consisted of a navy blue T-shirt with a single pocket, green pants, brown cotton gloves, a .22 caliber blue-steel long barreled revolver, and a box of .22 caliber long rifle cartridges. In holding that there was sufficient probable cause to believe that these items were on the described premises, we cited as authority, *United States v. Rahn*, 511 F.2d 290 (10th Cir. 1975) and, *United States v. Lucarz*, 430 F.2d 1051 (9th Cir. 1970). The defendant attacks this determination, contending that the cases on which this Court relied raised inferences much stronger than those raised by the circumstances in the instant case. However, neither of these cases professed to establish the minimum circumstances necessary for the issuance of a search warrant. Even so, in *Lucarz*, supra, it was determined that there was sufficient probable cause to believe that stolen property was in the residence of the defendant when consideration was given to the fact that the defendant had been absent from work for a period of time sufficient in length to have allowed him to hide the stolen property at his house and, when consideration was also given to the fact that the items were of a bulk and value which would require them to be hidden at a residence. We are of the opinion that the circumstances in the instant case are equally as strong as the inferences in *Lucarz*, supra. The defendant cites *United States v. Bailey*, 458 F.2d 408 (9th Cir. 1972) in support of his position that this Court erred in upholding the search warrant. However, a close reading of *Bailey* reveals that the reversal of the defendant's conviction was predicated on a failure to demonstrate that the residence identified in the search warrant was, in fact, the residence of the defendant. The search warrant, among other things, sought clothing of the defendant described by persons who had observed the defendant during the robbery. FBI Agents had seen a codefendant at the residence described in the search warrant. However, the Court held that there was no probable cause to believe the clothing

would be in that described residence in light of the fact that the FBI had failed to establish those premises as the residence of the defendant. In the instant case it was quite clearly established that the described premises was the residence of the defendant.

However, we are of the opinion that a determination of this issue is rendered moot when consideration is given to the fact that the clothing obtained in the search of the defendant's premises was not necessary to sustain a conviction. The victim, Toni Anderson, positively identified the defendant as the person who entered her home and shot her. Thus, the admission of the clothing at trial was simply cumulative and, its admission, if erroneous, was certainly not prejudicial. Actually, in light of the fact that the defendant had been identified, the evidence of the clothing was relatively of no importance at all.

For the above and foregoing reasons the decision as previously rendered is hereby *AFFIRMED* and the Clerk of this Court is therefore directed to issue a Mandate Forthwith.

AN APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY, OKLAHOMA

HONORABLE CRESTON B. WILLIAMS, JUDGE

PHILLIP BOLLINGER, Appellant, was convicted of the crime of Assault and Battery with a Deadly Weapon with Intent to Kill; his punishment was assessed at a term of five (5) years imprisonment, and appeals. Judgment and sentence AFFIRMED.

> TOM A. BOARDMAN
> DALLAS, TEXAS
> Attorney for Appellant

> LARRY DERRYBERRY, ATTORNEY GENERAL
> MICHAEL JACKSON, ASST. ATTY. GENERAL
> Attorneys for Appellee.

BRETT, P. J., and BUSSEY, J., concur.