Eathean FRITZ, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F–84–427.

Court of Criminal Appeals of Oklahoma.

Dec. 17, 1986.

Patti Palmer, Asst. Appellant Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., William H. Luker, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Presiding Judge:

The appellant, Eathean Fritz, was charged, tried and convicted in the District Court of Muskogee County, Case No. CRF–83–346, for the offense of Robbery With Firearms. His punishment was fixed at a term of twenty-two (22) years imprisonment. We affirm.

On June 13, 1983, at approximately 4:00 p.m., Mr. Snyder, owner of Snyder's Young Fashions, was tending his store. A woman, later identified as the appellant's wife and a co-defendant at trial, entered the store and Mr. Snyder offered to assist her. They proceeded to a back room of the store to view clothing. Mr. Snyder subsequently heard the doorbell ring, so he walked into the front room to observe who had entered. A man, later identified as the appellant, was standing near the cash register and Mr. Snyder asked if he could help him. The appellant responded by pointing a handgun at Mr. Snyder's stomach and stating, "You sure can." The appellant told Mr. Snyder to go to the back room, but Mr. Snyder resisted. The two men struggled, and the appellant managed to wrest Mr. Snyder's billfold from his pocket. While the men were struggling, the appellant's wife stated, "I'm getting out of here." Mr. Snyder next attempted to leave through the front door, but was struck from behind and knocked unconscious. He was thereafter dragged into a dressing room.

Mr. Snyder regained consciousness and attempted to leave the dressing room. The assailants told him to remain in the dressing room until they had left. Mr. Snyder

later reported the incident to the police, which ultimately led to the appellant's apprehension on June 14. The police subsequently obtained a search warrant to search the appellant's residence, which was executed on June 15. In the course of their search, the police found items of clothing from the store, Mr. Snyder's wallet, and several credit cards belonging to Mr. Snyder.

## I.

In his first assignment of error, the appellant challenges the legality of the search and seizure of items from his residence. The appellant attacks the search on two grounds.

## A.

■ The appellant first asserts that the affidavit in support of the search warrant was constitutionally defective. Specifically, he asserts that the affidavit failed to set forth facts and circumstances sufficient to permit a finding of probable cause by the magistrate. We disagree.

The search warrant affidavit states that the evidence listed in the affidavit "is now located" at the appellant's residence. The appellant asserts that such language was both conclusory and speculative, since the affiant did not actually observe the evidence at the appellant's residence. This Court has held that "all affidavits made by officers seeking a search warrant must ... show *the probability* that contraband, or items used in the commission of crime, or fruits of crime, are on the described premises...." *Leonard v. State*, 453 P.2d 257, 259 (Okl.Cr.1969) (emphasis added). This Court has further held:

> [T]he logical inference is that a criminal, who believes his identity has been concealed, would return clothing and property to his home. Such an inference is not certainty, but a certainty is not required. And, we are of the opinion that, at the least, *a probability existed* that the property sought was indeed at the residence of the defendant. The trial court did not err in finding that probable cause

existed to believe that the listed articles were on the described premises.

*Bollinger v. State*, 556 P.2d 1035, 1039 (Okl.Cr.1976). As in *Bollinger, id.*, such a probability existed in the instant case to supply the requisite probable cause necessary for the issuance of the search warrant.

## B.

■ The appellant also asserts that the officers executing the search warrant exceeded the scope of the search warrant, thus turning the search into an illegal general search. The appellant supports his contention on the fact that six credit cards seized by the authorities were not listed on either the search warrant or the search warrant affidavit. The items listed on the affidavit and on the search warrant were fruits and instrumentalities of the robbery which occurred on June 13, 1983. The credit cards also were fruits of the robbery, but were erroneously omitted from both the affidavit and warrant. Although we agree that the seizure of the credit cards was error, we decline to reverse the judgment and sentence herein.

■ As a general rule, items which are not described in a search warrant may not be seized. *United States v. Tamura*, 694 F.2d 591 (9th Cir.1982); *United States v. Acree*, 450 F.Supp. 734 (W.D.Okl.1976). However, an exception to this rule is that seizure of items within the "plain view" of officers, who are legitimately in a position to obtain that view, is permissible. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The Attorney General proposes the applicability of the "plain view" rule in this case. However, the "plain view" exception is not unrestricted; warrants which particularly describe the articles to be seized still are to be obtained, when practical, otherwise the warrant requirement would be circumvented. As the Supreme Court explained in *Coolidge:*

> [There are] two distinct constitutional protections served by the warrant requirement. First, the magistrate's scru-

tiny is intended to eliminate altogether searches not based on probable cause. The premise here is that any intrusion in the way of search or seizure is an evil, so that no intrusion at all is justified without a careful prior determination of necessity. The second, distinct objective is that those searches deemed necessary should be as limited as possible. Here, the specific evil is the "general warrant" abhorred by the colonists, and the problem is not that of intrusion *per se*, but of a general, exploratory rummaging in a person's belongings.

The warrant accomplishes this second objective by requiring a "particular description" of the things to be seized.

*Id.* at 467, 91 S.Ct. 2038–39 (citations omitted). If the police are allowed, upon entry of a house under a legitimate warrant, to seize any item regardless of its connection to the crime and regardless of whether they knew the items were on the premises, the requirement that a warrant particularly describe the items to be seized would be rendered meaningless. The otherwise proper warrant would be rendered a general warrant in its execution, if not in form.

 Accordingly, the Supreme Court in Coolidge set out the following prerequisites for the seizure of items in "plain view": (1) the police must legitimately be in a position to obtain the view in order for the seizure to be permitted; (2) the object must be in plain view; (3) the incriminating nature of the article must be readily apparent; and, (4), the discovery of the article must have been inadvertent. *Id.* at 464–72, 91 S.Ct. at 2037–41. The final two requirements for plain view seizures are the crucial ones in the seizures of articles not mentioned in the search warrant. In this case the appellant argues that the discovery of the credit cards was not inadvertant,[1] and we agree.

Regarding the inadvertance[2] requirement, the Supreme Court has stated that:

... [T]he discovery of evidence in plain view must be inadvertent. The rationale of the exception to the warrant requirement ... is that a plain view seizure not turn an initially valid (and therefore limited) search into a "general" one, while the inconvenience of procuring a warrant to cover an inadvertent discovery is great. But where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it, the situation is altogether different. The requirement of a warrant to seize imposes no inconvenience in a legal system that regards warrantless searches as "per se unreasonable" in the absence of "exigent circumstances"

*Id.* at 469–471, 91 S.Ct. at 2040. Justice Stewart further explained that:

to extend the scope of such an intrusion to the seizure of objects ... which the police *know* in advance they will find in plain view and *intend* to seize, would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure.

*Id.* at 471, 91 S.Ct. at 2051 (emphasis added).

The facts of this case clearly show that the seizure of the credit cards was unlawful. Police Officer Loretta Hudson testified at preliminary hearing that the officers were searching for the victim's billfold and credit cards. At trial, she initially testified that they were looking for only the items listed in the warrant, but, after reviewing her preliminary hearing testimony

---

1. The appellant also has asserted the incriminating nature of the items was not readily apparent. However, it is clear that the officers were aware that credit cards were taken in the robbery. Therefore, a "logical nexus" existed between the unnamed items and those items listed in the warrant. *United States v. Gentry,* 642 F.2d 385, 387 (10th Cir.1981).

2. Only four members of the Court, led by Justice Stewart, argued that the discovery of evidence in plain view must be inadvertent. *Id.* 403 U.S. at 445, 91 S.Ct. at 2077. However, although Justice Harlan's concurrence did not extend to that part of the opinion in which the inadvertance requirement was discussed, it did extend to another part of the opinion which adopted the inadvertance requirement. *Id.* at 490–93, 91 S.Ct. 2050–51. Oklahoma specifically adopted in this requirement in *Morris v. State,* 507 P.2d 1327, 1329 (Okl.Cr.1973).

during cross-examination, she admitted they were also searching for the credit cards. Officer Mark Hudson testified he was looking only for the wallets, but this testimony was contradicted by Officer Loretta Hudson that all wallets had been found in the closet. That portion of the Motion to Suppress which complained of the seizure of the credit cards should have been sustained, and the trial court erred in admitting this evidence.

However, it does not follow that this error requires reversal. As a matter of constitutional law, error which is shown to be "harmless" beyond a reasonable doubt will not support reversal. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The credit cards seized were only a small portion of a large number of items which connected the appellant with this crime. These other items were properly seized by police. Moreover, the eyewitness identification by the victim was never challenged, and was positive. Therefore, under the standard announced in *Chapman v. California*, we hold that this error lacked sufficient prejudice to justify reversal.

This assignment of error is denied.

## II.

Next, the appellant asserts that the trial court violated his right to equal protection of the laws by requiring him to share his peremptory challenges with his co-defendant. We disagree. Under Oklahoma statute, "two or more defendants [who] are tried jointly ... shall join in their [peremptory] challenges...." 22 O.S. 1981, § 655. The United States Supreme Court has upheld similar statutes under Sixth Amendment scrutiny. In *Stilson v. United States*, 250 U.S. 583, 40 S.Ct. 28, 30, 63 L.Ed.2d 1154 (1919), the Court stated that "[t]here is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges to defendants in criminal cases; trial by an impartial jury is all that is secured."

The Supreme Court has also addressed an equal protection argument concerning the number of peremptory challenges. The Court held that "the power of the legislature of a state to prescribe the number of peremptory challenges is limited only by the necessity of having an impartial jury." *Hayes v. Missouri*, 120 U.S. 68, 71, 7 S.Ct. 350, 352, 30 L.Ed. 578 (1887). In *Hayes*, the statute in question provided that, in all capital cases, the state shall be allowed to have eight peremptory challenges, except in cities of over 100,000 inhabitants, whereas in such cities the state shall be allowed fifteen peremptory challenges. The Court upheld this statute.

The statute in the instant case clearly does not involve a suspect class, *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971), nor does it appear to contravene a fundamental right. *Stilson v. United States, supra; Hayes v. Missouri, supra.* Accordingly, our analysis must center on whether the statute is rationally related to a legitimate state interest. *Royster Guano Co. v. Virginia*, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920). In addressing this identical issue, the Indiana Supreme Court has stated:

> The purpose served by the limitation upon peremptory challenges is twofold. It serves to maintain the number of peremptory challenges at a workable level, and thereby it avoids the waste of judicial resources and the undue delay which would result from granting each defendant [five] peremptory challenges....

*Martin v. State*, 262 Ind. 232, 317 N.E.2d 430, 432 (1974). We find such reasoning persuasive, and hereby hold that the statute in the case at bar, section 655, is rationally related to a legitimate state interest and, hence, does not violate the equal protection clause of the Fourteenth Amendment. *Accord State v. Allan*, 88 Wash.2d 394, 562 P.2d 632 (1977); and *Sitarski v. State*, 358 F.Supp. 817 (W.D.N.Y.1973). Accordingly, this assignment of error is without merit.

## III.

In his third assignment of error, the appellant contends that he was denied

the effective assistance of counsel. The appellant grounds this assertion of the fact that his attorney admitted his client's guilt in opening and closing arguments. Upon a review of the record, it becomes evident that this trial strategy was requested by the appellant himself in order to mitigate his own punishment, and in an attempt to weaken the State's case against his wife, the co-defendant. The appellant may not argue now as ineffective assistance that strategy which he insisted upon at trial. We have reviewed this contention on the basis of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and find the contention to be without merit.

## IV.

 In his last assignment of error, the appellant claims he was deprived of the effective assistance of counsel when the attorney who represented him at preliminary hearing was married to the assistant district attorney who filed the Information thereby creating a conflict of interest. The attorney in question represented appellant at the preliminary hearing only, and his wife made no appearances in the case. We disagree. In reviewing this contention, we find the American Bar Association Formal Opinion 340 (Sept. 23, 1975) persuasive authority. In that opinion, the Committee on Ethics and Professional Responsibility stated:

> It is not necessarily improper for husband-and-wife lawyers who are practicing in different offices or firms to represent differing interests. No disciplinary rule expressly requires a lawyer to decline employment if a husband, wife, son, daughter, brother, father, or other close relative represents the opposing party in negotiation or litigation.

> A lawyer whose husband or wife is also a lawyer must, like every other lawyer, obey all disciplinary rules, for the disciplinary rules apply to all lawyers without distinction as to marital status. We cannot assume that a lawyer who is married to another lawyer necessarily will violate any particular disciplinary rule, such as those that protect a client's confidences, that proscribe neglect of a client's interest, and that forbid representation of differing interests.

> ... [T]he lawyer should advise the client of all circumstances that might cause one to question the undivided loyalty of the law firm and let the client make the decision as to its employment.

Upon a review of the record and the aforementioned authority, we refuse to reach a holding, upon these facts, that a conflict of interest existed. We likewise refuse to indulge in a presumption that married lawyers will be disloyal to their clients. Accordingly, we find this assignment of error to be without merit.

Finding no merit to the appellant's assignments of error, the judgment and sentence of the District Court should be, and hereby is, AFFIRMED.

BRETT, J., concurs.

BUSSEY, J., concurs in results.