2000 OK CR 15

**Donald Ray WACKERLY, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

No. F–98–554.

Court of Criminal Appeals of Oklahoma.

Aug. 11, 2000.

Rehearing Denied Oct. 10, 2000.

Steven D. Hess, Oklahoma Indigent Defense System, Capital Trial Division, Norman, Larry W. Tedder, Oklahoma City, For Appellant at Trial.

Darrell Dowty, Tahlequah, for the State at Trial.

Katherine Jane Allen, Kimberly D. Heinze, Michael D. Morehead, Oklahoma Indigent

Defense System, Capital Direct Appeals Div., Norman, for Appellant on Appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Seth S. Branham, Assistant Attorney General, Oklahoma City, for Appellee on Appeal.

## O P I N I O N

STRUBHAR, Presiding Judge:

¶ 1 Appellant, Donald Ray Wackerly, was convicted of First Degree Murder and First Degree Robbery, in the District Court of Sequoyah County, Case No. CF–96–349, after a jury trial held before the Honorable John Garrett. As to the count of First Degree Murder, the State filed a Bill of Particulars alleging two aggravating circumstances: 1) that the murder was committed for the purpose of avoiding or preventing lawful arrest or prosecution;[1] and 2) the existence of a probability that Appellant would commit criminal acts of violence that would constitute a continuing threat to society.[2] The jury found the existence of each of the alleged aggravating circumstances and assessed punishment at death on the First Degree Murder conviction. The jury assessed punishment at life imprisonment on the First Degree Robbery conviction. The trial court sentenced Appellant accordingly. From this Judgment and Sentence Appellant has perfected his appeal.[3]

## FACTS

¶ 2 On the afternoon of September 7, 1996, Appellant and his wife, Michelle Wackerly, drove to a lock and dam area near Muldrow. They were looking for a person to rob and kill. The preceding night, Appellant had told his wife that they needed money and he was going to do whatever it took to get it. As he said this, Appellant, wearing latex gloves, loaded his rifle. When they were driving around the following afternoon, they saw a blue Toyota pickup parked by a levy and an Asian man fishing on the other side of the levy. Appellant parked his Jeep by the blue pickup and Michelle got out and walked around to look for other people in the area. Seeing none, she approached the man and spoke to him for about five minutes. She then went back to where the vehicles were parked. After forty-five minutes the man came back over the levy carrying his fishing gear. Appellant had raised the hood of his Jeep and asked the man if he had jumper cables to give him a jump. Knowing what was going to happen, Michelle knelt down behind the Jeep. She heard seven or eight gun shots and a thump. When she walked back around the Jeep, she saw that the man was in the bed of his pickup and Appellant was trying to pull a fishing pole out from under him. Michelle heard the man still trying to breath. Appellant drove the man's truck to another location where he drove it into the water. Along the way he threw some of the man's fishing poles into a wooded area. He kept the man's reels and a tackle box. A couple of days later, Appellant took the reels to Rocky's Pawn Shop in Roland. He kept the tackle box.

¶ 3 Around 12:30 a.m. on September 8, 1996, while Dennis Butler and his nephew, Rodney, were four-wheeling near a dam on the Arkansas river, they came upon a truck that was partially submerged in the water. A body was lying in the truck bed. They went back to Rodney's house and called the sheriff's department to report what they had seen. Dennis and Rodney escorted law enforcement officers to the truck where subsequent investigation revealed that Pan Sayakhoummane had been shot and was dead in the bed of the truck.

¶ 4 The investigation led to no suspects in this case until several months later. In December of 1996, Michelle Wackerly, Appellant's then estranged wife, along with her attorney, met with OSBI agents Franchini and Page. Michelle told the OSBI agents

1. 21 O.S.1991, § 701.12(5).

2. 21 O.S.1991, § 701.12(7).

3. Appellant's Petition–in–Error was filed in this Court on November 6, 1998. His Brief–in–Chief was filed on August 9, 1999, and the State's Response Brief was filed on December 7, 1999. Appellant's Reply Brief was filed on December 27, 1999. The case was submitted to this Court on December 21, 1999, and oral argument was heard on March 7, 2000.

what had happened and she took them to where the murder had occurred. Pursuant to Michelle's information, agents retrieved fishing reels from Rocky's Pawn Shop. The owner of the shop confirmed that Appellant had pawned the reels. Appellant's apartment was searched and the search revealed, among other things, a .22 rifle, a box of ammunition with some bullets missing, some latex gloves, and the victim's tackle box. Michelle also directed the agents to the fishing poles that Appellant had thrown from the victim's truck into the woods.

## VOIR DIRE ISSUES

¶ 5 Although most of the voir dire proceedings were conducted in open court on the record, that portion of voir dire where the parties exercised peremptory challenges was held in chambers and off the record. Appellant complains in his fourth proposition that this failure to maintain a complete record in a capital case was error which requires reversal. In support of his position he cites to decisions of this Court where relief was granted in capital cases upon a finding that the trial record was incomplete. *See Conover v. State*, 1999 OK CR 26, 990 P.2d 291 (reversal of sentencing stage was required where significant portions of the transcript, including the death qualifying portion of voir dire, were missing); *Van White v. State*, 1988 OK CR 47, 752 P.2d 814 (failure to transcribe voir dire required reversal as such failure prevented this Court from determining whether the trial court erred in excluding prospective jurors under *Witherspoon v. Illinois*[4] and *Wainwright v. Witt*[5]). Appellant recognizes, however, that this Court has also held that a lack of record alone will not warrant reversal. *See Parker v. State*, 1994 OK CR 56, ¶¶ 26-27, 887 P.2d 290, 295 (Court failed to find reversible error where bench conferences were not recorded as no allegations of evidentiary error were alleged and lack of record of bench conferences did not hinder Court's ability to conduct the mandatory sentence review).

¶ 6 In the present case, Appellant alleges that reversal is warranted as a result of the failure to transcribe the exercise of peremptory challenges because without a record to review, it cannot be determined whether *Witherspoon* or *Batson*[6] issues exist which could have been raised. The omission from the record of the exercise of peremptory challenges does not affect counsel's or this Court's ability to review for *Witherspoon* issues. The death qualifying portion of the voir dire proceedings, including challenges for cause, has been preserved in the record.

¶ 7 With regard to Appellant's claim that the prosecutor may have exercised peremptory challenges in violation of *Batson*, we note that this Court held, in *Black v. State*, 1994 OK CR 4, ¶ 23, 871 P.2d 35, 42, where the peremptory challenges were off the record and there was no way to ascertain what, if any, reason was given for the dismissal of potential jurors, that Appellant waived his *Batson* challenge by failing to make a timely objection at trial. Accordingly, this Court can only review the record for fundamental error, viewing the pertinent facts in the light most favorable to the trial court's rulings. *Id.*

¶ 8 Appellant notes that it is apparent from the record that of the four Native Americans in the panels of potential jurors, two were struck by the State's use of peremptory challenges. The State argues that race neutral reasons for dismissing the two Native American jurors are evident from the record as both potential jurors had friends or relatives who had been or were being prosecuted for murder and both expressed a hesitation to impose the death penalty.[7] Under these circumstances, combined with the lack of objection by defense counsel who was privy to the off-the-record conference at which the jurors were struck, we hold Appellant has not successfully raised an inference the prosecutor used peremptory challenges

---

4. 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).

5. 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).

6. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

7. Trial Transcript pp. 22–23, 61–62, 44–45.

to strike jurors based upon race. We therefore find no fundamental error, as we are not left with "a definite and firm conviction that a mistake has been committed." *Hernandez v. New York*, 500 U.S. 352, 369–370, 111 S.Ct. 1859, 1871–72, 114 L.Ed.2d 395, 412–13 (1991) (plurality opinion). This proposition warrants no relief.

¶ 9 Appellant argues in his eleventh proposition that his constitutional rights were violated by the trial court's failure to remove, sua sponte, jurors who would automatically vote for the death penalty. He specifically complains that six jurors should have been removed for cause when they indicated that they were unable to consider fairly the lesser penalties of life and life without the possibility of parole. This Court has held that "[i]t is the duty of counsel to examine jurors on voir dire. Counsel then must discover any facts affecting their qualifications and then reasonably raise any objection that might exist as to any member of the panel." *Tate v. State*, 1995 OK CR 24, ¶ 33, 896 P.2d 1182, 1191. Failure to do so waives all but plain error. *Id.* However, this Court has also held that "[t]he failure of the trial court to remove a prospective juror who unequivocally states that he is unwilling to follow the law during the penalty phase by considering a life sentence is error." *Ross v. State*, 1986 OK CR 49, ¶ 11, 717 P.2d 117, 120, *cert. granted*, 482 U.S. 926, 107 S.Ct. 3209, 96 L.Ed.2d 696 (1987).

¶ 10 Of the six potential jurors at issue, four were removed by the defense through the exercise of peremptory challenges and only two, Jurors Sumoeter and Stuart, remained on the jury. Appellant cannot complain about the four potential jurors who did not sit on the jury. *See Tate*, 1995 OK CR 24, at ¶ 34, 896 P.2d at 1191. Further, he has failed to show how the use of his peremptory challenges on these four potential jurors prejudiced him. *Id.*

¶ 11 As to the remaining jurors, Sumoeter and Stuart, the record reveals that while each of these jurors expressed a clear ability to vote for the death penalty, they did not express that this was the only punishment option they would consider. Mrs. Sumoeter stated that she could consider the full range of punishment; life, life without the possibility of parole and death. She also mentioned that she had written a college research paper on capital punishment and she believed the death penalty to be applicable in some cases but she would consider all three punishment options based upon the evidence.[8] Mrs. Stuart stated that she could consider the full range of punishment and listen to mitigating evidence.[9] As neither of these potential jurors unequivocally stated that she was unwilling to follow the law during the penalty phase by considering any penalty other than death, the trial court cannot be found to have erred in not removing them for cause. Appellant also argues in his eleventh proposition that the trial court erred by refusing to conduct an individual voir dire. Appellant acknowledges this Court's ruling "[t]hat the decision to allow individual voir dire of potential jurors is committed to the sound discretion of the trial court and is not a right guaranteed to a defendant." *Douglas v. State*, 1997 OK CR 79, ¶ 15, 951 P.2d 651, 661, *cert. denied*, 525 U.S. 884, 119 S.Ct. 195, 142 L.Ed.2d 159 (1998). In the present case, individual voir dire was not warranted. There is nothing in the record to indicate that the jurors were less than candid in their responses concerning the death penalty or that their responses to questions about the death penalty were given to avoid jury service. There is no evidence Appellant was denied a fair trial or a reliable sentencing hearing by the trial court's denial of the motion for individual voir dire.

## FIRST STAGE ISSUES

¶ 12 In his first proposition, Appellant contends that items seized from his house pursuant to the execution of the search warrant should have been suppressed. He claims that the affidavit upon which the magistrate relied in issuing the search warrant omitted three fundamental pieces of information which, if known to the magistrate, would

---

8. Trial Transcript pp. 104, 125–30.

9. Trial Transcript pp. 104, 168.

have precluded a finding of probable cause. Accordingly, Appellant argues that because the magistrate was deprived of fundamental information, the probable cause determination should be vitiated.

¶ 13 In *Franks v. Delaware*, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978), the Supreme Court held that an affidavit supporting a factually sufficient search warrant may be attacked upon allegations that the affidavit contained deliberate falsehoods or reckless disregard for the truth. However, if when the inaccuracies are removed from consideration there remains in the affidavit sufficient allegations to support a finding of probable cause, the inaccuracies are irrelevant. *See Id.* "To determine this issue, we ask whether the warrant would have been issued if the judge had been given accurate information." *Gregg v. State*, 1992 OK CR 82, ¶ 19, 844 P.2d 867, 875, *citing United States v. Page*, 808 F.2d 723, 729 (10th Cir.1987), *cert. denied*, 482 U.S. 918, 107 S.Ct. 3195, 96 L.Ed.2d 683 (1987).

¶ 14 Appellant specifically complains that the affiant, OSBI Agent Franchini, misled the magistrate by omitting information concerning the informant's varying accounts of her recollection regarding the location of the gun. Appellant also complains that the affiant omitted from the affidavit that the informant, Michelle Wackerly, had given information in exchange for complete immunity from prosecution. Finally, Appellant complains that the affiant failed to inform the magistrate that at the time the warrant was issued, the authorities had not yet fully established the informant's veracity. However, Appellant has not shown these omissions to be fundamental pieces of information which, if known to the magistrate, would have precluded a finding of probable cause.

¶ 15 The affidavit supporting the search warrant indicates that during the course of their investigation Michelle had taken agents to the place where the victim had been killed and the area where Appellant had thrown the victim's fishing poles. The affidavit also reveals that authorities had confirmed information provided by the informant that Appellant had pawned two of the victim's fishing reels at Rocky's Pawn Shop. When reviewing

the totality of the circumstances, including both allegations included in the affidavit and those which Appellant contends should have been included in the affidavit, there is no doubt but that upon being fully informed, the magistrate would still have had a substantial basis for concluding that probable cause existed. *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (The standard for review for the validity of a search warrant is the totality of circumstances). *See also Lynch v. State*, 1995 OK CR 65, ¶ 18, 909 P.2d 800, 804–05 (Our duty as a reviewing Court is simply "to ensure that the magistrate had a substantial basis for concluding that probable cause existed."). Accordingly, we find the affiant's failure to inform the magistrate of the complained of omissions was not material to the finding of probable cause.

¶ 16 Appellant also complains in his first proposition that when the search warrant was executed, officers exceeded the scope of the warrant by seizing items not described therein. Although several items not listed in the warrant were seized by police, only one of these, a box of latex gloves, was actually admitted into evidence at trial. Generally, items not described in a search warrant may not be seized. *Fritz v. State*, 1986 OK CR 181, ¶ 8, 730 P.2d 530, 532. Appellant acknowledges that an exception to this rule is that seizure of items within the "plain view" of officers, who are legitimately in a position to obtain that view, is permissible. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). However, he argues that the box of gloves was not in plain view as it was found in a closed drawer of a bedside table. We find that this argument is not persuasive. The warrant authorized authorities to search for wallets and documents of identification belonging to the victim—items which may well have been placed in the closed drawer of a bedside table. Accordingly, when police opened the drawer to search for the small items listed in the search warrant, the items therein were in plain view. Further, although the latex gloves were not listed in the warrant, because the police had probable cause to believe that they may be useful as

evidence they acted properly in seizing the gloves. *See Texas v. Brown*, 460 U.S. 730, 739, 103 S.Ct. 1535, 1542, 75 L.Ed.2d 502 (1983). This proposition is without merit.

¶ 17 Appellant complains in his second proposition that after the case was submitted to the jury, they were allowed to separate. The record reflects that the trial court did allow the jury to take a ten minute break after the case had been submitted to them and before they retired to the jury room for deliberations. During this time, while the evidence was being moved to the jury room, the jurors were allowed to go down stairs to smoke or to congregate at the end of the hall where they had taken other breaks.

¶ 18 It is true that under 22 O.S.1991, § 857, the jury may not separate after they have begun deliberations. This Court has held that if they are allowed to separate and commingle with people outside the group, prejudice is presumed. *See Elliott v. State*, 1988 OK CR 81, ¶ 14, 753 P.2d 920, 922. However, this Court has also held that, "[w]hen the court allows the jury to separate and counsel for both sides is present, their failure to object waives any potential error caused by the separation." *Id. See also Day v. State*, 1989 OK CR 83, ¶ 15, 784 P.2d 79, 84.

¶ 19 In the case at bar, with counsel for both sides present, the judge allowed the jury to "separate" and go unattended into the hall or downstairs to smoke. Although defense counsel had filed a motion prior to trial to prohibit jury dispersal, no objection was made at this time nor was any admonishment requested. Accordingly, this Court may find that this error has been waived for review on appeal.

¶ 20 During the first stage of trial, the state called Michelle Wackerly to testify. She testified about statements Appellant made to her the night before the murder concerning his intent to kill someone and statements he made the following day around the time that the murder took place. Appel-

lant argues in his third proposition that the statements he made to his wife about the murder were confidential communications under 12 O.S.1991, § 2504 [10] which were privileged and that error occurred when Michelle Wackerly was allowed to testify about these privileged communications.

¶ 21 This Court has held that "[s]tatements between a husband and wife are confidential if made when they are alone, or are expressly made confidential by the parties, or are induced by the marital relationship." *Watkins v. State*, 1985 OK CR 79, ¶ 5, 702 P.2d 1045, 1046. However, exclusion of the testimony is not required if the accused subsequently discussed the subject matter with a third person. *Johnson v. State*, 1995 OK CR 62, ¶ 45, 911 P.2d 918, 927, *cert. denied*, 519 U.S. 839, 117 S.Ct. 116, 136 L.Ed.2d 67 (1996). In the present case, Appellant discussed the same subject matter with his brother-in-law, Curtis Jones. While he did not go into detail about the crime committed, he did admit to Jones that he had killed the victim in this case. Therefore, the confidential nature of his prior discussions with his wife was lost and exclusion of the challenged testimony was not required. The testimony of Michelle Wackerly regarding statements made to her by Appellant was not in error.

¶ 22 The trial court ruled as a matter of law that Michelle Wackerly was an accomplice and instructed the jury that her testimony had to be corroborated. In his fifth proposition, Appellant asserts that the accomplice testimony implicating him was not adequately corroborated by independent evidence.

¶ 23 "[T]he general rule is that testimony of an accomplice must be corroborated with evidence, that standing alone, tends to link the defendant to the commission of the crime charged...." *Sadler v. State*, 1993 OK CR 2, ¶ 22, 846 P.2d 377, 383. It is only required that there be at least one material fact of independent evidence that tends to connect the defendant with the com-

---

10. Title 12 O.S.1991, § 2504(A) provides:
A communication is confidential for purposes of this section if it is made privately by any person to his spouse and is not intended for disclosure to any other person.

mission of the crime. *Id.* Further, "this evidence may be direct or circumstantial and need not corroborate all of the material aspects of the crime." *Tibbs v. State,* 1991 OK CR 115, ¶ 26, 819 P.2d 1372, 1380.

¶ 24 Appellant argues that aside from Michelle Wackerly's testimony that he actually shot the victim, there was no evidence which linked him to the actual commission of the crime. He claims that all other evidence—evidence that Michelle knew where to find the fishing poles, evidence that he had pawned the fishing reels, evidence that he was found to possess the rifle and tackle box—merely raises a suspicion of his guilt. Assuming, arguendo, that none of this evidence standing alone would necessarily link Appellant to the commission of the crime charged, there is other evidence which does. Curtis Jones testified that Appellant told him what had happened. In reference to the victim in this case, Appellant told Jones that "he was the one that did it." [11] Although Appellant argues that this testimony was too vague and unreliable to serve as adequate corroboration, we find it is sufficient independent evidence which links Appellant to the commission of the crime charged. Hence, the evidence was sufficient to corroborate the accomplice's testimony.

¶ 25 Appellant argues in his sixth proposition that the evidence was insufficient to support his conviction for Robbery with a Firearm. He asserts that an essential element of robbery is that the victim must have been induced to part with his or her property by fear and there was no evidence in the present case that the victim was alive and in fear when the property was taken. Robbery with a Firearm is simply a robbery accomplished with the use of a firearm.[12] Robbery, is "a wrongful taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." [13] While the robbery in the present case may not have been accomplished by means of fear, it most certainly was accomplished by

means of force. We decline to find merit in Appellant's argument that his robbery conviction cannot stand because the victim was killed before his property could be taken by means of fear. *See Mitchell v. State,* 1965 OK CR 138, ¶ 12, 408 P.2d 566, 571 (this Court adopted the premise that if the taking of property from the person of another is accomplished by force, although the victim does not know what is being done, it is, nevertheless, robbery). *See also Diaz v. State,* 1986 OK CR 167, ¶¶ 6–7, 728 P.2d 503, 509.

¶ 26 Appellant also contends that the robbery conviction cannot stand because the State relied wholly upon uncorroborated accomplice testimony to support it. As discussed above in Proposition V, the accomplice testimony about the events which gave rise to the charges in the present case was corroborated by independent evidence. This allegation of error is without merit.

¶ 27 Next, Appellant complains that the State failed to prove the crime of Robbery with a Firearm as alleged in the Information. The Information charged Appellant with having committed the crime of robbery by having taken and carried away from the victim "[t]wo fishing reels and an unknown amount of money." [14] Appellant argues that although Michelle Wackerly testified that Appellant had taken a wallet from the victim, she did not mention ever seeing any money taken by Appellant. Appellant fails to mention that the State did present evidence that he took from the victim two fishing reels as was alleged in the Information. Accordingly, there was no variance between the Information and the evidence presented at trial. This argument is without merit.

¶ 28 Finally, Appellant argues that because the evidence was insufficient to support the robbery conviction, the State relied upon constitutionally insufficient evidence to support the imposition of the death penalty. Accordingly, he contends the imposition of his death sentence was unconstitutional. As we have found that the evidence was sufficient to

---

11. Trial Transcript pp. 391–92.

12. 21 O.S.1991, § 801.

13. 21 O.S.1991, § 791.

14. Original Record p. 2.

support his conviction for Robbery with a Firearm, this argument must also fail.

## ISSUES AFFECTING BOTH STAGES OF TRIAL

¶ 29 In his thirteenth proposition of error, Appellant claims he was denied a fair trial and sentencing proceeding because of improper comments made by the prosecutor during both stages of his trial. Appellant cites to several comments which he contends exceeded the bounds of proper prosecutorial advocacy. He claims that the prosecution improperly aligned itself with the jury, induced societal alarm, gave personal opinions, denigrated mitigating evidence, appealed for sympathy for the victims, encouraged a sentence based upon emotion and arbitrary factors and misstated the law. None of the comments complained of were objected to at trial. Accordingly, as to these remarks, all but plain error has been waived. *Freeman v. State*, 1994 OK CR 37, ¶ 15, 876 P.2d 283, 287–88, *cert. denied*, 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994).

¶ 30 Many of the alleged instances cannot truly be labeled "prosecutorial misconduct." Rather, they were the typical sort of questions asked or comments made during the normal course of a trial and accordingly, these instances fall within the broad parameters of effective advocacy and do not constitute error. *Martinez v. State*, 1999 OK CR 33, ¶ 44, 984 P.2d 813, 825, *cert. denied*, —— U.S. ——, 120 S.Ct. 1840, 146 L.Ed.2d 782 (2000). While a few instances bordered upon impropriety we must review them in light of the entire record. *Id.* at 826. Because we do not find that the inappropriate comments deprived Appellant of a fair trial or affected the jury's finding of guilt or assessment of the death penalty, we decline to grant relief on this proposition.

¶ 31 Appellant alleges in his fourteenth proposition that trial counsel made several errors which denied him effective assistance of counsel. To show ineffective assistance of counsel, a defendant must meet the two-pronged test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First he must show that defense counsel's performance was deficient. This requires a showing that counsel made errors so egregious that he was not functioning as the counsel guaranteed by the Sixth Amendment. Second, he must show he was prejudiced by the deficient performance; that counsel's errors deprived him of a fair trial with a reliable outcome. *Id.* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. "Any showing that the outcome would have been different is sufficient." *Duckett v. State*, 1995 OK CR 61, ¶ 11, 919 P.2d 7, 14, *cert. denied*, 519 U.S. 1131, 117 S.Ct. 991, 136 L.Ed.2d 872 (1997). *See also Fisher v. State*, 1987 OK CR 85, ¶ 28, 736 P.2d 1003, 1011–12, *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988).

¶ 32 Appellant first complains that defense counsel was ineffective for failing to inquire whether ten of the twelve jurors seated would automatically impose the death penalty. The record reflects that the jurors were asked whether they could consider all three possible punishments for first degree murder. It is true that defense counsel could have pursued this further and asked each potential juror if they would automatically impose the death penalty. *See Jones v. State*, 1999 OK CR 8, ¶ 2, 990 P.2d 247, 249. While counsel did not ask this specific question he did ask a variety of other questions designed to garner from the jurors their opinions regarding the death penalty. Accordingly, on this issue we decline to find that defense counsel's performance was deficient.

¶ 33 Appellant also argues that defense counsel was deficient for failing to ask that two jurors who were partial to the death penalty be removed for cause. In Proposition XI Appellant complained that Jurors Sumoeter and Stuart were not dismissed for cause. We noted that while each of these jurors expressed a clear ability to vote for the death penalty, they did not express that this was the only punishment option they would consider. We found that because neither of these potential jurors unequivocally stated that she was unwilling to follow the law during the penalty phase by considering any penalty other than death, the trial court did not err in failing to remove them for

cause. As Appellant was not entitled to have these two jurors removed for cause, defense counsel cannot be found deficient for failing to request such removal.

¶ 34 It is also Appellant's contention that trial counsel was ineffective for failing to object to the testimony of Michelle Wackerly on the grounds that it violated the marital privilege statute. As noted in Proposition III, the confidential nature of Appellant's prior discussions with his wife was lost when he discussed the same subject matter with his brother-in-law, Curtis Jones. Accordingly, exclusion of this testimony was not required. *See Johnson*, 1995 OK CR 62, at ¶ 18, 911 P.2d at 927. Defense counsel cannot be found deficient for failing to object to this admissible testimony.

¶ 35 Appellant further argues that defense counsel was deficient for failing to object to the improperly admitted victim impact evidence. As we note in Proposition XII, the victim impact statement was extremely short and largely appropriate. Even if counsel should have objected to this statement as it referenced unnamed family members, Appellant has fallen far short of showing that this failure to object rendered counsel's performance deficient. Hence, we cannot find Appellant was denied effective assistance of counsel based upon this allegation of error.

¶ 36 Finally, Appellant argues that he was denied effective assistance of counsel because defense counsel failed to argue at the suppression hearing that when the affiant obtained the search warrant he failed to inform the magistrate that the Informant was giving information in exchange for a deal and that the Informant's story had not yet been verified. Again, as discussed in Proposition I, these two alleged omissions did not constitute error affecting the constitutionality of the search warrant. Accordingly, defense counsel was not deficient for failing to argue them at the suppression hearing.

¶ 37 In addition to the ineffective assistance of counsel claims raised by Appellant in his Brief–in–Chief, he filed an Application for an Evidentiary Hearing asserting three additional claims which he contends are supported by evidence not in the record but which was available to defense counsel at the time of trial. In this application, Appellant requests an evidentiary hearing on: 1) the failure of defense counsel to impeach Michelle Wackerly; 2) the failure of defense counsel to produce evidence during the *Franks* hearing to establish that Agent Franchini misrepresented information regarding Michelle Wackerly's recollection of the location of the gun [15]; and 3) counsel's failure to investigate and present available evidence which would have warranted different verdicts and sentences in the first and second stages of trial.

**15.** On March 3, 2000, Appellant filed a Motion to Amend Original Application For Evidentiary Hearing on Sixth Amendment Claim in which he urges this Court to consider a tape recording of an OSBI interview with Michelle Wackerly and her attorney. Appellant avers that this tape recording supports the argument that defense counsel was ineffective for failing to bring to the trial court's attention evidence that Agent Franchini may have perjured himself in order to place in the affidavit sufficient information to support the magistrate's finding of probable cause. Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (1999) provides that when an allegation of ineffective assistance of counsel is predicated upon trial counsel's alleged failure to utilize available evidence "appellate counsel may submit an application for an evidentiary hearing, together with affidavits setting out those items alleged to constitute ineffective assistance of trial counsel." Appellate counsel in the present case has not attempted to amend his original application for evidentiary hearing with affidavits but instead, has attempted to amend his original application with the actual tape recording and the transcript thereof which he contends supports his claim. The tape recording and transcript are not properly before this Court and cannot be considered when ruling upon the application for evidentiary hearing. Accordingly, Appellant's Motion to Amend Original Application For Evidentiary Hearing on Sixth Amendment Claim is denied. As an aside, we note that even if we could consider the tape recording it would not change our ruling on the application for evidentiary hearing as there is no clear and convincing evidence showing a strong possibility that counsel was ineffective for failing to show that Michelle Wackerly's attorney invited Agent Franchini to perjure himself. Again, even if the magistrate had known of Michelle Wackerly's varying recollections of where the gun had last been seen and her attorney's willingness to have her say what he believed Franchini wanted to hear, the magistrate would still have had an abundance of sufficient, reliable information upon which to base his finding of probable cause.

¶ 38 Appellant requests this evidentiary hearing based upon Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (1999). This rule allows an appellant to request an evidentiary hearing when it is alleged on appeal that trial counsel was ineffective for failing to "utilize available evidence or adequately investigate to identify evidence which could have been made available during the course of trial...." Once an application has been properly submitted along with supporting affidavits, this Court reviews the application to see if it contains "sufficient evidence to show this Court by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence." Rule 3.11(B)(3)(b)(i).

¶ 39 Upon review of the application and supporting exhibits, we find Appellant has shown this Court that trial counsel could perhaps have accessed other information in preparing for trial. However, Appellant has not shown by clear and convincing evidence a strong possibility that defense counsel was ineffective for failing to utilize or identify the complained-of evidence. Accordingly, we decline to grant Appellant's application for an evidentiary hearing.

## SECOND STAGE ISSUES

¶ 40 The jury found the alleged aggravating circumstance that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. In his seventh proposition Appellant contends that this finding was unsupported under the law for several reasons. Appellant correctly advises that this aggravating circumstance requires a predicate crime, separate from the murder, for which a defendant seeks to avoid arrest or prosecution. *See Barnett v. State,* 1993 OK CR 26, ¶ 30, 853 P.2d 226, 233. "Where such crimes are not separate and distinct from the murder itself, but rather significantly contribute to the death, they may not be used as the predicate crime for purposes of this aggravating circumstance." *Id.* at 234. Appellant argues that the evidence presented at trial did not support this aggravating circumstance because the rob-

bery was not a predicate crime, separate and distinct from the murder.

¶ 41 The evidence presented at trial makes clear that Appellant intended to commit a robbery and was prepared to kill to get the money he wanted. Although the murder occurred contemporaneously with the robbery, we find it was separate and distinct from the robbery. The evidence in the present case was sufficient to support the jury's finding that the murder was committed to avoid lawful arrest or prosecution.

¶ 42 It is also argued that the State failed to prove beyond a reasonable doubt that Appellant intended to commit murder for the purpose of preventing or avoiding lawful arrest. This Court has held that a defendant's intent is critical to a determination of whether he killed to avoid arrest or prosecution. *See Powell v. State,* 1995 OK CR 37, ¶ 66, 906 P.2d 765, 781, *cert. denied,* 517 U.S. 1144, 116 S.Ct. 1438, 134 L.Ed.2d 560 (1996). We have further noted that "as in other areas of criminal law, the defendant's intent can be proved by circumstantial evidence." *Id. See also Snow v. State,* 1994 OK CR 39, ¶ 33, 876 P.2d 291, 299, *cert. denied,* 513 U.S. 1179, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995). When the evidence relied upon to support this aggravating circumstance is entirely circumstantial, the evidence must exclude any reasonable hypothesis except that Appellant murdered the decedent to avoid arrest or prosecution for the underlying robbery. *See Romano v. State,* 1995 OK CR 74, ¶ 73, 909 P.2d 92, 119, *cert. denied,* 519 U.S. 855, 117 S.Ct. 151, 136 L.Ed.2d 96 (1996).

¶ 43 It is not clear from the facts of this case whether Appellant intended to killed his victim to facilitate the robbery or whether he killed his victim to avoid arrest for the robbery. There is some circumstantial evidence that Appellant was interested in avoiding detection for this crime. This is evinced by the testimony of Michelle Wackerly that after they parked by the victim's truck, Appellant told her to go over the levy and see if

there were any other people in the area.[16] Because Appellant did not disguise his identity, the victim could have identified him after the robbery. Accordingly, this Court finds that the evidence excludes every reasonable hypothesis except that Appellant killed to avoid arrest.

¶ 44 Appellant next argues that during voir dire, the prosecutor provided an incomplete and misleading definition of this aggravating circumstance to the jury. The record supports this assertion. However, the record also reveals that the comment at issue was not met with objection by defense counsel. The general rule is that when the State makes an objectionable statement, it is incumbent upon defense counsel to make a timely, contemporaneous objection. Failure to object waives all but plain error on appeal. *Cheatham v. State*, 1995 OK CR 32, ¶ 37, 900 P.2d 414, 422. This isolated comment did not rise to the level of plain error.

¶ 45 The trial court instructed the jury that the State relied "in part" on circumstantial evidence to prove this aggravator.[17] Appellant argues that this instruction was in error as all of the evidence relied upon to support this aggravating circumstance was circumstantial. Again, as counsel did not object to this instruction he has waived all but plain error. *Wilson v. State*, 1998 OK CR 73, ¶ 79, 983 P.2d 448, 466, *cert. denied*, 528 U.S. 904, 120 S.Ct. 244, 145 L.Ed.2d 205 (1999). This instruction was not plain error.

¶ 46 Finally, Appellant argues that the aggravating circumstance that "the murder was committed for the purpose of avoiding arrest or prosecution" is being applied and interpreted in an unconstitutionally vague and overbroad manner. The aggravating circumstance, "that the murder was committed to avoid lawful arrest or prosecution" has been found to be neither vague nor overbroad. *See Toles v. State*, 1997 OK CR 45, ¶ 61, 947 P.2d 180, 192, *cert. denied*, 524 U.S. 958, 118 S.Ct. 2380, 141 L.Ed.2d 746 (1998). *See also Castro v. State*, 1992 OK CR 80, ¶ 44, 844

P.2d 159, 175, *cert. denied*, 510 U.S. 844, 114 S.Ct. 135, 126 L.Ed.2d 98 (1993).

¶ 47 At the close of the second stage of trial, defense counsel requested the jury be instructed that they could consider as mitigating evidence that "Michelle Wackerly, the accomplice to these charges, was given immunity from prosecution." [18] The trial court declined to give this instruction. Appellant argues in his eighth proposition that this ruling was in error. In support of his argument Appellant cites *Penry v. Lynaugh*, 492 U.S. 302, 327–28, 109 S.Ct. 2934, 2951, 106 L.Ed.2d 256 (1989) for its holding that a "jury must be allowed to consider and give effect to mitigating evidence relevant to a defendant's character or record or the circumstances of the offense." Appellant correctly notes that this Court has addressed the issue of whether an accomplice's sentence is relevant to a defendant's character, record or is a circumstance of the offense:

> In the sentencing phase of the trial, the fact that an alleged accomplice did not receive the death penalty is no more relevant as a mitigating factor for the defendant than the fact that an alleged accomplice did receive the death penalty would be as an aggravating circumstance against him. Simply put, an alleged accomplice's sentence has no bearing on the defendant's character or record and it is not a circumstance of the offense.

*Brogie v. State*, 1985 OK CR 2, ¶ 39, 695 P.2d 538, 546–47, *citing Coulter v. State*, 438 So.2d 336 (Ala.Cr.App.1982).

¶ 48 Appellant argues that *Brogie* and *Coulter* are distinguishable from the present case as neither decision considered the relevance of such evidence when an accomplice testifies against the accused. We find this distinction to be inapposite to the reasoning of *Brogie* and *Coulter*. Although the accomplice's sentence or immunity from prosecution is not relevant as a mitigating factor, defense counsel was allowed to argue that the jury should not subject Appellant to death while the other participant in this crime was free from prosecution. In turn,

---

16. Trial Transcript p. 308.

17. Original Record p. 270.

18. Original Record p. 286.

the State acknowledged that justice was not meted out to one participant in the crime and urged the jury to do "justice" in the present case by giving Appellant the death penalty. Appellant argues that the prosecutor unfairly used this evidence against him. Just as an accomplice's sentence is not relevant as mitigating evidence, it is also irrelevant as evidence against an accused. However, in the present case, the prosecutor's comments were not met with objection and accordingly, will not warrant relief absent a showing of plain error. *Martinez,* 1999 OK CR 33, at ¶ 67, 984 P.2d at 825. Appellant argues that in light of the absence of his requested instruction and the prosecutor's argument, the jury was only allowed to use evidence of the accomplice's immunity from prosecution against him. We find it equally tenable that they could have considered defense counsel's arguments to the contrary. There was no plain error here.

¶ 49 Appellant asserts in his ninth proposition that the application of the continuing threat aggravating circumstance to his case violated his constitutional rights. He specifically argues that the trial court's instructions to the jury regarding this aggravating circumstance were constitutionally infirm because they did not require the State to prove beyond a reasonable doubt that he *would* commit future acts of violence, only that there existed a *probability* that he *would* commit future acts of violence which would constitute a continuing threat to society. This, he contends, was confusing to the jury as it suggested that the State was required to prove only a probability that Appellant would commit future acts of violence despite the fact that Oklahoma statutes require the jury to find aggravating circumstances unanimously and beyond a reasonable doubt. Appellant's argument is misplaced as Oklahoma statutes clearly require the State to prove beyond a reasonable doubt the existence of a probability that Appellant would commit criminal acts of violence which would constitute a continuing threat to society. 21 O.S.1991, §§ 701.11 and 701.12(7).

¶ 50 Appellant also argues that the use of the word "probability" renders the aggrava-

ting circumstance unconstitutional as a "probability" is a statistical term, the application of which is incapable of narrowing the class of defendants who are eligible for the death penalty. Thus, he argues the word "probability" renders the aggravator unconstitutionally vague and overbroad. The argument that the continuing threat aggravating circumstance is vague and overbroad has been consistently rejected by this Court. *E.g., Cannon v. State,* 1998 OK CR 28, ¶ 73, 961 P.2d 838, 855; *Bryan v. State,* 1997 OK CR 15, ¶ 55, 935 P.2d 338, 365, *cert. denied,* 522 U.S. 957, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997). Further, we have specifically found that "the phrase 'the existence of a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society' is clear and does not require further definition." *Id.*

¶ 51 Appellant also argues that the trial court's instructions to the jury on the continuing threat aggravating circumstance were vague and did not sufficiently narrow the jury's discretion as they allowed the jury to presume the requisite threat of future violence upon a finding of any type of future generalized threat. They did not properly focus the jury's attention on future acts of violence. This argument has been previously rejected by this Court in *Short v. State,* 1999 OK CR 15, ¶ 70, 980 P.2d 1081, 1103–04, *cert. denied,* 145 U.S. 683, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000). We will not depart from this holding at this time. Appellant's argument's are rejected.

¶ 52 In his tenth assignment of error, Appellant contends the evidence was insufficient to support the "continuing threat" aggravating circumstance. To support this aggravator, the State must present evidence showing the defendant's behavior demonstrated a threat to society and a probability that threat would continue to exist in the future. *Humphreys v. State,* 1997 OK CR 59, ¶ 35, 947 P.2d 565, 576, *cert. denied,* 511 U.S. 1077, 114 S.Ct. 1663, 128 L.Ed.2d 379 (1994). This Court has held that prior unadjudicated acts of violent conduct are relevant to the determination of whether a defendant is likely to commit future acts of violence that would constitute a continuing

threat to society. *Darks v. State,* 1998 OK CR 15, ¶ 41, 954 P.2d 152, 164. Evidence of the callous nature of the crime and a defendant's blatant disregard for the importance of human life has been held sufficient to support this aggravating circumstance as well. *Id.*

¶ 53 To support the alleged continuing threat aggravator in the present case, the State introduced evidence that Appellant had committed an unadjudicated robbery of a convenience store in Webber Falls. Appellant acknowledges that this Court has long held that evidence of unadjudicated crimes is admissible to show that a defendant poses a continuing threat to society. *See Turrentine v. State,* 1998 OK CR 33, ¶ 77, 965 P.2d 955, 977, *cert. denied,* 525 U.S. 1057, 119 S.Ct. 624, 142 L.Ed.2d 562 (1998). However he urges this Court to depart from this established precedent for the reasons stated by Judge Chapel in his dissent in *Paxton v. State,* 1993 OK CR 59, ¶¶ 2–9, 867 P.2d 1309, 1334–36 (Chapel, dissenting), *cert. denied,* 513 U.S. 886, 115 S.Ct. 227, 130 L.Ed.2d 153 (1994). Appellant would have this Court ban the use of unadjudicated crimes to prove the continuing threat or, in the alternative, place restrictions on the use of such evidence. We decline to revisit this issue at this time.

¶ 54 Appellant also argues that allowing evidence of unadjudicated crimes to be used to prove the continuing threat aggravating circumstance violates his constitutional right to equal protection of the law because Oklahoma law bans the use of unadjudicated offenses to enhance punishment for noncapital offenses. To show an equal protection violation Petitioner must show that this law "impermissibly interferes with his exercise of a fundamental right or operates to the peculiar disadvantage of him as a member of a suspect class; or that the [law] is not rationally related to a legitimate state interest." *Clayton v. State,* 1995 OK CR 3, ¶ 17, 892 P.2d 646, 654, *cert. denied,* 516 U.S. 846, 116 S.Ct. 137, 133 L.Ed.2d 84 (1995). Appellant does not argue that he is a member of a suspect class, but indicates this law must be evaluated under the rational basis test. Accordingly, Appellant must prove there is no rational basis for the law

which allows the use of unadjudicated crimes be used to prove the continuing threat aggravating circumstance if he is to succeed in his argument. Under this approach, the challenged classification must be "rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976). *See also Crawford v. State,* 1994 OK CR 58, ¶ 5, 881 P.2d 88, 90, *citing Swart v. State,* 1986 OK CR 92, ¶ 9, 720 P.2d 1265, 1268. This constitutional standard is "offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective." *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

¶ 55 We believe that Oklahoma's capital sentencing procedure passes constitutional muster under the rational basis standard. The purpose of allowing evidence of nonadjudicated offenses is to assist the jury in determining whether the defendant is likely to be a continuing threat to society. This evidence helps focus the jury on the individual offender. Oklahoma has a strong interest in ensuring that all relevant evidence concerning the capital defendant is placed before the jury so that it can consider the evidence when determining whether the alleged aggravating circumstances exist. In furthering this interest, the State could rationally decide that different procedures should be used for capital defendants than for noncapital defendants. We reject Appellant's claim that Oklahoma's use of nonadjudicated offenses to support the continuing threat aggravating circumstance violates the Equal Protection Clause of the Fourteenth Amendment.

¶ 56 The evidence of Appellant's robbery of the Hit and Run convenience store in Webber Falls only nine days after the crime which is the subject of the present case was not unsupported and unreliable as Appellant argues. Michelle Wackerly testified that she and Appellant robbed the convenience store. She stated that they wore masks and each carried a gun. Appellant wore an orange and brown hunting mask. Colleen Parker testified that she was the clerk at the Hit and Run store in Webber Falls on September 16, 1996, when the store was robbed by two

people. The male was mostly covered and was holding a dark colored gun. On September 21, 1996, Stigler police stopped a jeep occupied by Appellant and Michelle Wackerly. A subsequent search of this vehicle revealed an orange face mask and a .22 pistol. This gun was identified by Colleen Parker as the weapon which Appellant used during the robbery of the Hit and Run.

¶ 57 Appellant also argues that the nature of the crime in this case does not support the continuing threat aggravating circumstance because the crime was not committed in a particularly brutal or calloused manner. "In determining the callousness of the crime, the defendant's attitude is critical to the determination of whether he poses a continuing threat to society." *Turrentine*, 1998 OK CR 33, at ¶ 78, 965 P.2d at 977. Further, "[a] defendant who does not appreciate the gravity of taking another's life is more likely to do so again." *Snow*, 1994 OK CR 39, at ¶ 30, 876 P.2d at 298. In the present case, the calloused nature of the crime, evinced in part by Appellant's cavalier attitude about taking another person's life, supported the continuing threat aggravating circumstance. Accordingly, we find that the jury's determination that Appellant poses a continuing threat to society beyond a reasonable doubt is supported by evidence of the unadjudicated robbery and the calloused nature of the crime. Reversal of this aggravating circumstance is not required.

¶ 58 In his twelfth proposition, Appellant argues that his death sentence must be vacated because the victim impact evidence violated his constitutional rights. He first complains that the victim impact testimony given by the victim's wife violated the statutory restrictions on victim impact testimony because she testified that "all of the family" misses the victim and feels grief.[19] Appellant contends that this was improper victim impact testimony because it could have referred to the effects of the crime on individuals beyond those enumerated in the statute. Proper victim impact evidence is limited to information "about the financial,

emotional, psychological, and physical effects of a violent crime on each victim and members of their immediate family...."[20] The term "members of the immediately family" is defined as "the spouse, a child by birth or adoption, a stepchild, a parent, or sibling...."[21] While it is true that Mrs. Sayakhoummane did not specify to whom she was referring when she referenced "all of the family" or "we," any error in the few ambiguous references to family that she made in her extremely short victim impact statement cannot be found to have been anything but a minor departure from the statutory requirements. The arguably improper portions of this victim impact statement, which were not met with objection, were not plain error which could in any way be found to have affected the sentencing proceeding.

¶ 59 Appellant also complains that the trial court erred in failing to hold an in-camera hearing to determine the admissibility of the victim impact evidence. It is true that this Court has held that an in-camera hearing should be held by the trial court to determine the admissibility of the evidence as it relates to 12 O.S.1991, § 2403. *Cargle v. State*, 1995 OK CR 77, ¶ 76, 909 P.2d 806, 828, *cert. denied*, 519 U.S. 831, 117 S.Ct. 100, 136, 136 L.Ed.2d 54 L.2d 54 (1996). The failure of the trial court to hold the in-camera hearing was error. However, the record reflects that defense counsel did not object to the presentation of the victim impact evidence at trial and therefore, he has waived all but plain error. *See Le v. State*, 1997 OK CR 55, ¶ 38, 947 P.2d 535, 551, *cert. denied*, 524 U.S. 930, 118 S.Ct. 2329, 141 L.Ed.2d 702 (1998). The victim impact statement was extremely short and it was largely appropriate. The failure to hold an incamera hearing was harmless beyond a reasonable doubt. There was no plain error.

¶ 60 Finally, Appellant argues that victim impact evidence negates the narrowing function that death penalty procedures are required to provide. He argues it operates as a "superaggravator" that skews the results in

---

**19.** Trial Transcript p. 532–33.

**20.** 22 O.S.Supp.1999, § 984(1).

**21.** 22 O.S.Supp.1999, § 984(2).

the balancing of aggravating and mitigating circumstances. We have consistently rejected this argument noting that the State is required to prove at least one aggravator beyond a reasonable doubt before the death penalty may be imposed. *See Alverson v. State*, 1999 OK CR 21, ¶ 73, 983 P.2d 498, 519, *cert. denied*, 528 U.S. 1089, 120 S.Ct. 820, 145 L.Ed.2d 690 (2000).

¶ 61 In his fifteenth proposition, Appellant argues that the instructions given to the jury on the issue of mitigation permitted jurors to ignore the mitigating evidence altogether and seriously diminished the effect of the mitigating evidence. He also contends the instructions on the manner in which the jury was to weigh the aggravating circumstances were erroneous and set forth an improper burden of proof. Although Appellant acknowledges that this Court has rejected these arguments in the past,[22] he urges this Court to reconsider its prior rulings. As Appellant has not provided persuasive argument as to why we should reconsider well established precedent, we decline to do so at this time.

¶ 62 In his final proposition, Appellant asks this Court to review the aggregate impact of the errors in his case in addition to reviewing the errors individually.

This Court has held that where there is no error present, there can be no accumulation of error. However, when there have been numerous irregularities during the course of the trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial.

(citations omitted) *Smith v. State*, 1996 OK CR 50, ¶ 62, 932 P.2d 521, 538, *cert. denied*, 521 U.S. 1124, 117 S.Ct. 2522, 138 L.Ed.2d 1023 (1997). *See also Bechtel v. State*, 1987 OK CR 126, ¶ 12, 738 P.2d 559, 561. While it can be found in the present case that there were irregularities during the course of the trial, even taken together, these cannot be found to have been so great as to have denied Appellant a fair trial. Accordingly,

after reviewing the errors in aggregate, we find that they were harmless beyond a reasonable doubt. Relief is not warranted.

## MANDATORY SENTENCE REVIEW

¶ 63 In accordance with our statutory duty, we must now determine whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor, and also whether the evidence supports the jury's finding of the alleged statutory aggravating circumstances. *See* 21 O.S. 1991, § 701.13(C). We are satisfied that neither passion, prejudice nor any other arbitrary factor contributed to the jury's sentencing determination. After carefully reviewing the evidence presented, we also find that it supported the jury's finding of the aggravating circumstances.

¶ 64 Finding no error warranting reversal or modification, Appellant's Judgment and Sentence is **AFFIRMED**.

JOHNSON, J., and LILE, J., concur.

LUMPKIN, V.P.J., and CHAPEL, J., concur in results.

LUMPKIN, Vice–Presiding Judge:
Concur in Result.

¶ 1 I concur in the Court's decision to affirm the judgment and sentence in this case. However, I write to address what I believe should be the analysis in two of the propositions of error.

¶ 2 In the Court's analysis of Proposition III, it fails to point out Appellant is attempting to raise the issue of marital privilege for the first time on appeal. He failed to raise any objection at trial to what he now alleges were confidential marital communications. Failure to object waives the issue and Appellant has failed to show the admission of the testimony constitutes plain error. *See Simpson v. State*, 876 P.2d 690 (Okl.Cr.1994). In addition, the actions of Michelle Wackerly were not communications/conversations which would fall within the marital privilege.

---

22. *See Alverson*, 1999 OK CR 21, at ¶ 66, 983 P.2d at 518; *Salazar v. State*, 1998 OK CR 70, ¶ 33, 973 P.2d 315, 328, *cert. denied*, 528 U.S. 895, 120 S.Ct. 226, 145 L.Ed.2d 190 (1999);

*Patton v. State*, 1998 OK CR 66, ¶ 99, 973 P.2d 270, 298, *cert. denied*, 528 U.S. 939, 120 S.Ct. 347, 145 L.Ed.2d 271 (1999).

She would have been able to testify as to what she observed regardless of whether the privilege had been claimed or not. *See Coleman v. State*, 668 P.2d 1126, 1134 (Okl.Cr. 1983). *See also 2 L. Whinery, Oklahoma Evidence: Commentary on the Law of Evidence*, § 38.05 (1994). For these reasons, I agree Proposition III is without merit.

¶ 3 Appellant alleges ineffective assistance of counsel in Proposition XIV. This Court has consistently applied the two pronged test set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in adjudicating whether counsel was ineffective. In explaining the prejudice prong of *Strickland*, this Court has previously relied on *Lockhart v. Fretwell*, 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180, 189 (1993) to the extent that an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. Our reliance upon *Lockhart's* analysis into the fundamental fairness of the trial to explain one prong of the *Strickland* test was based upon language from *Strickland* that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result," 466 U.S. at 686, 104 S.Ct. at 2064, and "[s]econd, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." 466 U.S. at 694, 104 S.Ct. at 2064. However, recently in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court backed away from its emphasis on the fundamental fairness of the trial when analyzing prejudice. The Court stated that an analysis of the prejudice prong was to focus solely on whether there was a reasonable probability that but for counsel's unprofessional errors, the rest of the proceeding would have been different. *Id.* at 120 S.Ct. 1495. Therefore, pursuant to *Williams*, our analysis of an ineffective assistance of counsel claim is appropriately based solely upon the two prong test set forth in *Strickland*,

and our prejudice determination is based upon whether the outcome of the trial would have been different but for counsel's unprofessional errors.

¶ 4 The Court's discussion of Proposition VII is somewhat inherently inconsistent and fails to apply the proper standard of review. This record presents both direct and circumstantial evidence both as to the crime itself and the proof of the aggravating circumstances found by the jury. As to the crime itself, I have previously stated this Court should adopt a unified *Spuehler*-type approach to evaluating the sufficiency of the evidence in all cases, whether they contain both direct and circumstantial evidence, or whether they contain entirely circumstantial evidence. *See White v. State*, 900 P.2d 982, 993–94 (Okl.Cr.1995) (Lumpkin, J., specially concurring). However, "[w]hen the sufficiency of the evidence of an aggravating circumstance is challenged on appeal, the proper test is whether there was any competent evidence to support the State's charge that the aggravating circumstance existed." *Romano v. State*, 847 P.2d 368, 387 (Okl.Cr. 1993). "In making this determination, this Court should view the evidence in the light most favorable to the State." *Id.* Applying the proper test the evidence is sufficient to support the finding of the jury as to each of the aggravators.